IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JARTU NGAFUA, on behalf of herself and all persons similarly situated,<br>　　　　　　Plaintiff,<br><br>　　　　v.<br><br>CAREPINE HOME HEALTH, LLC and ELIUD OMOLLO,<br>　　　　　　Defendants. | CIVIL ACTION<br><br><br><br>NO.  23-1468 |

HODGE, J.                                                                                         March 26, 2025

## MEMORANDUM

Plaintiff Jartu Ngafua ("Ngafua") brings claims against Defendants CarePine Home Health, LLC ("CarePine"), and Eliud Omollo (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"); Pennsylvania Minimum Wage Act, 43 Pa. Stat. § 333.101 *et seq*.; and Philadelphia Wage Theft Ordinance, Phila. Code § 9-4301 *et seq*.

Presently before the Court is Defendants' Motion for Partial Summary Judgment (ECF No. 19) on Retaliation, FLSA (Count IV) of Ngafua's Amended Complaint (ECF No. 1-2). Ngafua has filed a Memorandum in Opposition (ECF No. 20). The Court, having considered Defendants' Motion and Ngafua's response in opposition, denies Defendants' Motion for the reasons that follow.

I.  **BACKGROUND**

    A.  **Factual Background**[1]

In 2016, Ngafua began working as an hourly home health aide for CarePine, a "Licensed Home Health Agency servicing Philadelphia, Wayne, Delaware, Montgomery and Bucks counties."[2] (ECF No. 20-5 at 23, 32). From approximately 2018 through May 2022, Ngafua provided care to patient Lordia Jackson ("Jackson") almost exclusively. (ECF No. 20-7 at 2; ECF No. 20-5 at 44). According to Jackson, Ngafua "regularly worked seven days a week for [her], very long days," (ECF No. 20-7 at 2), and Ngafua testified that she never slept on the job. (ECF No. 20-5 at 57). Indeed, based on Jackson's observation of Ngafua's work, knowledge of Ngafua's working time, and communications with Ngafua's boss, Eliud Omollo (*Id.* at 29-30), Jackson stated that Ngafua provided her with care for 100+ hours per week. (ECF No. 20-7 at 2-3). This attestation is corroborated by Ngafua's paychecks from December 19, 2021 to March 26, 2022, which showed that she worked at a rate of $12 per hour for 200+ hours for seven consecutive biweekly pay periods:

- 12/19/2021 – 01/01/2022: $2,760.00 for 230 hours
- 01/02/2022 – 01/15/2022: $2,760.00 for 230 hours
- 01/16/2022 – 01/29/2022: $2,727.36 for 227.28 hours
- 01/30/2022 – 02/12/2022: $2,657.04 for 221.42 hours
- 02/13/2022 – 02/26/2022: $2,631.00 for 219.25 hours
- 02/27/2022 – 03/12/2022: $2,649.84 for 220.82 hours
- 03/13/2022 – 03/26/2022: $2,760.00 for 230 hours

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.
[2] https://www.carepine.com/about-us/

(ECF No. 20-6 at 17-23).

On April 7, 2022, Jackson gave birth to twins after having been hospitalized approximately one to two weeks prior due to medical complications. (ECF No. 20-7 at 3). Ngafua did not provide care to Jackson while she was hospitalized. (*Id.*). Jackson was discharged and returned home from the hospital on April 10, at which point Ngafua resumed providing in-home services for her "with similar hours as before [her] hospital stay." (*Id.*).

On April 19, 2022, Ngafua emailed Ashley Zimmerman ("Zimmerman"), the CarePine office scheduler, inquiring whether she would be receiving overtime pay:

> Hey Ashley. I'm just trying to understand my paycheck and what it say on paycheck. It say overtime yes and exempt no, so I want to understand if I'm getting overtime pay and what is the exempt because my paycheck don't reflect any overtime pay no matter what hours I been working with Lordia Jackson.

(ECF No. 20-6 at 8-11). The next day, Zimmerman forwarded Ngafua's email to Omollo, saying, "Please advise." (*Id.* at 12).

Two days later, on April 21, 2022, Ngafua emailed Zimmerman telling her that Jackson called Ngafua to inform her that Defendants had taken her off the work schedule from April 20-23. (*Id.* at 5). Ngafua also asked Zimmerman why her work hours — which had been 3:00 p.m. to 8:00 a.m. on Monday through Friday and 3:00 p.m. to 12:00 a.m. on Saturday and Sunday — had been reduced to 3:00 p.m. to 8:30 p.m. every day starting April 23, what could be done for her to receive backpay for her overtime, and to reinstate the hours she had been working for the previous two years. (*Id.*). Zimmerman immediately forwarded Ngafua's email to Omollo and never responded to Ngafua's questions or concerns. (*Id.*).

During and after the April 19-21 timeframe when Ngafua emailed Zimmerman with her questions about her hours and overtime pay, Ngafua's paychecks reflected the following:

3

- 04/10/2022 – 04/23/2022: $1,788.00 for 149 hours

- 04/24/2022 – 05/07/2022: $960.00 for 80 hours

- 05/08/2022 – 05/21/2022: $477.96 for 39.83 hours

(*Id.* at 13-15).

Regarding what date Ngafua stopped working for CarePine, Omollo testified, "We don't even know where we stand because she never really resign [sic]. . . . So we just – for all we know, she's still an employee. She just disappeared. We never terminated her and she never say [sic] she left." (ECF No. 20-8 at 93). Ngafua filed suit in this case on May 3, 2022, alleging wage and hour claims of discrimination. (ECF No. 1-1 at 5).

## II.   LEGAL STANDARD

A court can properly grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). " A fact is material if it could affect the outcome of the suit, given the applicable substantive law, and a dispute is genuine if the evidence presented is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  After the moving party has met the initial burden, the non-moving  party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). Summary judgment is  appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to  establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party" and make every reasonable inference in that party's favor. *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

### III. DISCUSSION

"The FLSA mandates that if an employee works more than forty hours per week, [s]he must be compensated for overtime hours at a rate at least one-and-one-half-times the employee's regular rate." *Pignataro v. Port Auth. Of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010) (citing 29 U.S.C. § 207(a)(1)).

The FLSA, in addition to its statutory mandates, also contains an anti-retaliation provision "to ensure that employees can assert their rights without fear of economic retaliation." *Hayes v. Saltz, Mongeluzzi & Bendesky, P.C.*, 652 F. Supp. 3d 537, 541 (E.D. Pa. 2023). This provision is codified at 29 U.S.C. § 215(a)(3), which makes it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." The Third Circuit directs this Court "to broadly construe[]" this provision and to not apply it "in a narrow, grudging manner." *Union v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269 (3d Cir. 2022).

FLSA retaliation claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). This framework has three elements. First, "the employee bears the initial burden of establishing a prima facie case of retaliation." *Marra v. Phila. Housing Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). Second, "[i]f the employee establishes a prima facie case of retaliation, the burden of production shifts to the employer to

5

articulate some legitimate, non-retaliatory reason for the adverse employment action." *Id.* Third, "[i]f the employer meets its burden, the burden of production returns to the employee, who must now show, by a preponderance of the evidence that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.*

### A.    Prima Facie Case

"To state a prima facie case of retaliatory discrimination under the FLSA, a plaintiff must plead that (1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015) (citation omitted). Defendants concede the first element of Ngafua's prima facie case and move for summary judgment on the basis that she cannot establish "that she suffered any adverse employment decision or that, even if she did, that such decision was causally connected to her engagement in protected activity." (ECF No. 19-1 at 4).

In her complaint, Ngafua classifies the adverse action as based upon two actions taken in concert by Defendants: (1) the reduction of her work hours and (2) the eventual termination of her employment. (ECF No. 1-2 at ¶ 60). Defendants respond by asserting that while Ngafua's claim is premised on constructive discharge, they never terminated her; rather, she abandoned her job. (ECF No. 19-1 at 5-6). The Third Circuit has defined "adverse employment action" as "an action that 'alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee.'" *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 257 (3d. Cir. 2014) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3d Cir. 1997)).

Defendants do not dispute the reduction of Ngafua's hours, nor do they dispute that the date they readjusted her schedule — and thus reduced her hours — began two days after Ngafua emailed Zimmerman with questions about her schedule and overtime. Ngafua's reduction in hours, as evidenced by her paychecks (ECF No. 20-6 at 4-23), altered her compensation negatively. In short, Ngafua received less pay due to less hours. Defendants state that while they did "reduce Plaintiff's hours to forty (40) hours per week, all of the evidence demonstrates that they were attempting to rectify the situation. The record is entirely empty of evidence which would be sufficient to establish constructive discharge." (ECF No. 19 at 5-6). However, the court disagrees. The record does contain some evidence from which a reasonable fact finder could determine that Plaintiff separated from her job not due to abandonment, but due to working conditions that would lead a reasonable person to believe that they are being constructively discharged. Moreover, Defendants' acknowledgment that they reduced Plaintiff's hours constitutes a concession that they took an adverse employment action against her. Hence, Plaintiff has met the second element of her prima facie case.

Having determined that Plaintiff's reduction in hours constitutes an adverse employment action, the Court looks to the third element -- whether there was a causal link between Ngafua questioning her lack of overtime pay and Defendants' reduction of her work hours. The Third Circuit has held that, to establish the requisite causal connection, a plaintiff "must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503-04 (3d Cir. 1997)). "Where the temporal proximity between the protected activity and the adverse action is 'unusually suggestive,' it is sufficient

standing alone to create an inference of causality and defeat summary judgment." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001)).

Ngafua has sufficiently put forth evidence that there was a causal relationship between her complaining about her lack of overtime pay and her reduction in hours because of the temporal proximity between the events. Jackson informed Ngafua of her change in hours on April 21, 2022, only two days after Ngafua asked CarePine about her reduction in hours on April 19, 2022. *See Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) ("We have found that a temporal proximity of two days is unusually suggestive of causation.")). Ngafua's new hours were significantly reduced based on the Court's review of her paychecks for the biweekly pay periods following her email to Zimmerman. Ngafua worked 80 hours from April 24, 2022 through May 7, 2022 — a 65% reduction in what her hours were before April 10, 2022 — and saw a further reduction to 39.83 hours for the two week pay period thereafter. In short, Ngafua saw an 83% reduction in her hours for the pay periods that followed her questioning of her schedule and overtime to Zimmerman on April 19, 2022. The Court concludes that Ngafua's reduction in hours, coupled with the timing of the reduction being so close in time to when Plaintiff inquired about her wages and hours, is sufficient for Ngafua to establish the third element of her prima facie case of FLSA retaliation.

### B.     Legitimate, Non-Discriminatory Reason for Adverse Employment Action

Defendants argue that they are entitled to summary judgment on Ngafua's FLSA retaliation claim because they have a legitimate, non-discriminatory reason for reducing Plaintiff's hours. The burden on the employer to produce a legitimate, non-discriminatory reason is "relatively light" and is satisfied by "introducing evidence which, taken as true, would

permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)).

Defendants argue that they reduced Ngafua's hours out of concern for her and Jackson's safety. (ECF No. 19-1 at 7). Omollo testified that Ngafua allegedly did not report Jackson's hospitalization to Defendants, and in investigating why she had failed to report this, Defendants found out that Ngafua "was working extra hours." (ECF No. 20-8 at 92-93). Upon making this discovery, Defendants decided to assign multiple employees to care for Jackson. The rationale for this change, as stated by Defendant to Ngafua, was that:

> You have been here a while. We feel like – we value your work. But we are going to bring somebody else to try take [sic] some of the hours off of you. So everything – so the patient is safe. If you are working 16 hours you are not safe with the patient, who knows what you are doing. Maybe you're sleeping. You can't take care of a patient if you're not taking care of yourself.

(ECF No. 20-8 at 82).

Thus, Defendants have put forth a rationale for their decision to reduce Plaintiff's hours. Accordingly, on its face, the Court finds that Defendants have satisfied their burden of introducing a legitimate, non-discriminatory reason for the adverse employment action.

### C.     Pretext

With Defendants having established their burden of producing a legitimate, non-discriminatory reason for reducing Plaintiff's hours, the burden then shifts back to Ngafua to show that Defendants' proffered reason is pretextual. To do so, Ngafua "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the

9

employer's action." *Fuentes*, 32 F.3d at 764.

Under the first prong of the *Fuentes* analysis, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (quoting *Fuentes*, 32 F.3d at 764). The second prong under *Fuentes* requires the plaintiff to "identify evidence in the summary judgment record that 'allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action.'" *Id.* (quoting *Fuentes*, 32 F.3d at 762).

The Court concludes that Ngafua has presented sufficient evidence to show that Defendants' legitimate, non-discriminatory reason for the adverse employment action was pretextual under *Fuentes*. As detailed above, the speed at which Defendants took Ngafua off the work schedule following her complaint, specifically when she had cared for Jackson 100+ hours per week for fourteen consecutive weeks from December 19, 2021 to March 26, 2022 — hours which Omollo knew or should have known of by virtue of signing her paychecks — shows that Defendants' primary, if not sole, motivation was to reduce Ngafua's hours. (ECF No. 20-8 at 145).  At the very least, the reduction of hours in such a significant way and in such a short time frame -- almost immediately after Ngafua questioned her hours and overtime -- undercuts the believability of the non-discriminatory reason put forth by Defendant. Moreover, there is no evidence that Defendants (1) monitored Ngafua's work hours from 2018 to April 2022 to ensure the safety of Jackson or any other patient; (2) reviewed the work hours of any other employee; (3) maintained any policies limiting employee hours for patient safety; or (4) conducted a patient safety investigation as a result of "discovering" that Ngafua was working

100+ hours per week. Therefore, after drawing all reasonable inferences in her favor, Ngafua has shown a plausible weakness and inconsistency in Defendants' reasoning on the reduction of hours adverse action that a reasonable fact finder could accept as true.

Ngafua has put forth sufficient evidence to question the believability of Defendants' legitimate, non-discriminatory reason for reducing her hours, thereby meeting the definition of pretext. *See Fuentes*, 32 F.3d at 764.

### IV.  CONCLUSION

Accordingly, and for the reasons set forth above, Defendants' Motion for Partial Summary Judgment is denied.

An appropriate Order follows.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

**HODGE, KELLEY B., J.**
